UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **JIM FARES,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | Case No. _____ 1 2 - 1 3 8 1 |
| **PETER LANKAU, DOUGLAS KARP,** | § | |
| **ERIC LIEBLER, WILLIAM MAICHLE,** | § | |
| **NEIL MILANO, GEOFFREY RAKER,** | § | |
| **FRANK SICA, ZUBEEN SHROFF,** | § | |
| **DAVID AZAD, JOHN GROOM,** | § | |
| **GALEN PARTNERS V, L.P.,** | § | |
| **GALEN PARTNERS INTERNATIONAL** | § | |
| **V, L.P., TAILWIND CAPITAL** | § | |
| **PARTNERS LP, TAILWIND HOLDINGS** | § | |
| **(CAYMAN), L.P., TAILWIND** | § | |
| **MANAGEMENT, L.P., TAILWIND** | § | |
| **CAPITAL PARTNERS (AI), L.P.** | § | |
| **TAILWIND CAPITAL PARTNERS** | § | |
| **(PP), L.P., TAILWIND CAPITAL** | § | |
| **PARTNERS (ERISA), L.P., and NAUTILUS** | § | |
| **NEUROSCIENCES, INC.,** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Jim Fares ("Plaintiff" or "Fares") files this Petition against defendants Peter Lankau,

Douglas Karp, Eric Liebler, William Maichle, Neil Milano, Geoffrey Raker, Frank Sica, Zubeen

Shroff, David Azad, John Groom, Galen Partners V, L.P., Galen Partners International V, L.P.,

Tailwind Capital Partners LP, Tailwind Holdings (Cayman), L.P., Tailwind Management, L.P.,

Tailwind Capital Partners (AI), L.P., Tailwind Capital Partners (PP), L.P., Tailwind Capital Partners

(ERISA), L.P., and Nautilus Neurosciences, Inc. ("Nautilus Neurosciences" or the "Company")

(collectively, "Defendants") seeking damages due to Defendants' wrongful dilution, breaches of

fiduciary duty, and aiding and abetting breach of fiduciary duty.  In support of this complaint,

Plaintiff respectfully shows the Court the following:

## I. THE PARTIES

1.    Plaintiff Fares is an individual who resides in Clark County, Nevada.

2.    Defendant Peter Lankau ("Lankau") is the Executive Chairman of the Board of Directors (the "Board") of Nautilus Neurosciences. Upon information and belief, Lankau is a citizen of Pennsylvania.

3.    Defendant Douglas Karp ("Karp") is a managing partner and Co-Chief Executive Officer ("CEO") at Tailwind Capital. He has been, at all relevant times, a director of Nautilus Neurosciences. Upon information and belief, Karp is a citizen of Connecticut.

4.    Defendant Eric Liebler ("Liebler") has been, at all relevant times, a director of Nautilus Neurosciences. Upon information and belief, Liebler is a citizen of New Jersey.

5.    Defendant William Maichle ("Maichle") is the CEO of Nautilus Neurosciences and has been, at all relevant times, a director of the Company. Upon information and belief, Maichle is a citizen of North Carolina.

6.    Defendant Neil Milano ("Milano") has been, at all relevant times, the Chief Financial Officer of Nautilus Neurosciences. Upon information and belief, Milano is a citizen of New Jersey.

7.    Defendant Geoffrey Raker ("Raker") is a managing director with the Tailwind companies – the controlling shareholder in this matter. He has been, at all relevant times, a director of Nautilus Neurosciences. Upon information and belief, Raker is a citizen of Connecticut.

8.    Defendant Frank Sica ("Sica") has been a managing partner with the Tailwind companies since 2005, and he has been, at all relevant times, a director of Nautilus Neurosciences. Upon information and belief, Sica is a citizen of New York.

9.    Defendant Zubeen Shroff ("Shroff") is a managing director of Galen Partners, and has

2

been, at all relevant times, a director of Nautilus Neurosciences. Upon information and belief, Shroff is a citizen of New York.

10.     Defendant David Azad ("Azad") is a principal with Galen Partners, and has been, at all relevant times, a director of Nautilus Neurosciences. Upon information and belief, Azad is a citizen of New York.

11.     Defendant John Groom ("Groom") has been, at all relevant times, a director of Nautilus Neurosciences. Upon information and belief, Groom is a citizen of New Jersey.

12.     Defendants referenced in ¶¶ 2 through 11 are collectively referred to as the Director Defendants.

13.     Defendant Galen Partners V, L.P. is, on information and belief, a Delaware limited partnership with its principal place of business located at 680 Washington Boulevard, 11th Floor, Stamford, Connecticut 06901.

14.     Defendant Galen Partners International V, L.P. is, on information and belief, a Delaware limited partnership with its principal place of business located at 680 Washington Boulevard, 11th Floor, Stamford, Connecticut 06901. Galen Partners V, L.P. and Galen Partners International V, L.P., due to joint action and control, and for ease of reference, shall be jointly referred to herein as the "Galen Partners."

15.     Defendant Tailwind Capital Partners LP is a Delaware limited partnership with its principal place of business located at 485 Lexington Avenue, New York, NY 10017.

16.     Defendant Tailwind Holdings (Cayman), L.P., is a Delaware limited partnership with its principal place of business located at 485 Lexington Avenue, New York, NY 10017.

17.     Defendant Tailwind Management, L.P., is a limited partnership with its principal place of business located at 485 Lexington Avenue, New York, NY 10017.

3

18.     Defendant Tailwind Capital Partners (AI), L.P., is a Delaware limited partnership with its principal place of business located at 485 Lexington Avenue, New York, NY 10017.

19.     Defendant Tailwind Capital Partners (PP), L.P., is a Delaware limited partnership with its principal place of business located at 485 Lexington Avenue, New York, NY 10017.

20.     Defendant Tailwind Capital Partners (ERISA), L.P., is a Delaware limited partnership with its principal place of business located at 485 Lexington Avenue, New York, NY 10017.

21.     In accordance with the Stockholders agreement, Tailwind Management, L.P., Tailwind Capital Partners (AI), L.P., Tailwind Capital Partners (PP), L.P., and Tailwind Capital Partners (ERISA), L.P. shall be jointly referred to herein as "Tailwind Investor."

22.     Nautilus Neurosciences is a Delaware corporation with its principal place of business located at 135 Routes 202/206, Bedminster, NJ 07921.

## II. JURISDICTION AND VENUE

23.     This Court has jurisdiction pursuant to 28 U.S.C. §1332(a)(2), because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs. This action is not a collusive action designed to confer jurisdiction on a Court of the United States that it would not otherwise have.

24.     This Court has jurisdiction over each Defendant because each Defendant is either a corporation that conducts business in, and maintains operations in, this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

25.     Venue is proper in this Court under 28 U.S.C. §1391(a) because (1) one or more of Defendants reside in, or maintain executive offices in, this district; (2) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the

4

wrongful acts described herein, occurred within this District; and/or (3) Defendants have received substantial compensation in this District by conducting business herein and by engaging in numerous activities that have an impact in this District.

### III. FACTS APPLICABLE TO ALL COUNTS

#### A.    Fares Founds Nautilus Neurosciences.

26.    Jim Fares founded Nautilus Neurosciences. He was responsible for identifying, negotiating, and acquiring the flagship product of Nautilus Neurosciences, "Cambia," a useful migraine medication. As CEO, Chairman and founder, Fares was able to negotiate favorable acquisition terms for Cambia from its developer, Kowa Pharmaceuticals, including seller financing on appropriate terms. Fares has been a successful executive in the pharmaceutical industry for over 25 years. He has started multiple successful private pharmaceutical companies and has led successful public companies.

27.    Fares invested $750,000 into Nautilus Neurosciences, including $500,000 in cash and an additional $250,000 by foregoing salary for one year. Fares has been, at all relevant times, a shareholder in Nautilus Neurosciences. *See* Verification attached hereto as Exhibit A.

28.    Cambia was launched in the U.S. migraine market in the spring of 2010 with a small sales force of 28 sales representatives. The migraine market in the United States is large and typically requires a sales team of at least 300-500 sales personnel to cover the migraine specialists and only part of the primary care physicians. Primary care physicians account for the largest share of prescriptions in the migraine market. The migraine market is substantial and valuable to larger companies with more developed sales and marketing infrastructure.

29.    Despite having extremely limited resources to compete in the U.S. migraine market, the Company's sales team was able to achieve a sales run rate of approximately $12 million just one

5

year later, in the spring of 2011.

30.     Fares left employment with the Company in April of 2011, but he remained a shareholder. However, after Fares left the Company, the controlling shareholder, Tailwind Investor, has continued to cause the Company to issue shares in order to dilute the value of Fares' shares. Tailwind Investor has caused the Company to do this at a per-share price of $345 that cannot be justified with a valid company valuation in order to obtain a larger percentage ownership for itself at an artificially lowered cost.

31.     Specifically, on May 9, 2012, Defendants caused Nautilus Neurosciences to issue a "Notice of Proposed Issuance of Notes." The notice stated the following:

> This Notice is being delivered to advise you of your right to purchase, as described in this Notice, up to your proportionate Share of a new issuance of up to $6.6 million in aggregate principal amount of 12% convertible promissory notes of the Company due July 1, 2013 (the "Notes"). . . . For your reference, your Proportionate Share of the Notes is a principal amount of $311,142.76.

32.     On May 11, 2012, without explanation, Defendants caused Nautilus Neurosciences to issue a "Notice of Proposed Issuance of Series C Preferred Stock." Under this second notice, Nautilus Neurosciences determined that it would not offer the Notes identified in the May 9, 2012 correspondence. Instead, under the May 11 correspondence, Defendants made Nautilus Neurosciences offer to issue up to 19,130.434 shares of Series C Convertible Preferred Stock of the Company, par value $0.01 per share, at a price of $345 per share.

33.     While Nautilus Neurosciences withdrew the Notes offering made on May 9, 2012, it apparently sought to maintain the Series C Preferred Stock it claims to have made just two (2) days earlier. The second notice stated that Fares' proportionate share of the offering was 901.863 shares.

34.     In any event, the offering price of $345 is unjustifiably low and does not reflect the proper value of the Company. Notably, in 2010, Fares was issued his shares at $1,000 per share.

6

And when his employment terminated in April 2011, Tailwind Investor offered Fares a 10% premium over his purchase price – $1,100 per share.

35.    Moreover, in 2011, the Company had an investment bank perform a valuation of Nautilus Neurosciences' value based on a revenue run rate of $12 million. In simple terms, the value of a typical pharmaceutical company is derived by a multiple of the Company's sales run rate or yearly sales. Generally speaking, typical multiples for a branded company may range from a multiple of 3-6 times the sales/yearly run rate.

36.    Currently, on information and belief, the Company is expected to have a run rate of between $23 and $25 million. Despite the clear upward revenue trend and corresponding substantial increase in company value, Defendants' notice nevertheless proposed to sell the Company's stock at a 65% *reduction* of the Company's per-share price.

37.    At this unjustifiably low per-share price, the Company is ostensibly worth less than its value as determined from an internal evaluation completed by a Tailwind Investor associate in December 2009. Moreover, this analysis projected an even higher valuation of the Company based on current metrics, such as the present $23 to $25 million run rate.

**B.    Defendants Charge Forward With the Improper Issuance, Refusing to Provide Requested Corporate Documents.**

38.    On June 4, 2012, Fares, through counsel, sent a letter to William Maichle, CEO of Nautilus Neurosciences, objecting to the proposed issuance due to the substantial, unjustified dilution it would work on minority interest holders. A true and correct copy of this correspondence is attached as Exhibit B. The letter was provided to the board of directors of Nautilus Neurosciences. Further, on June 13, 2012, Fares sent another letter requesting access to the corporation's books and records. A true and correct copy of this correspondence is attached hereto as Exhibit C.

39.     Defendants failed to comply with the requirement to provide access, and have refused

Fares' right to inspect the corporate records of the Company. Indeed, this failure followed a pattern

of refusing Fares' multiple requests to inspect the corporate records.

40.     Thereafter, on July 20, 2012, Neil Milano, as Chief Financial Officer, Secretary and

Treasurer, sent a document entitled "Notice to Minority Stockholders of Nautilus Neurosciences,

Inc.," which stated that:

> May 14, 2012, the holders of a majority of the issued an outstanding shares of the
> capital stock of the Corporation (Tailwind Capital Partners, L.P., Tailwind Holdings
> (Cayman), L.P., Tailwind Capital Partners (ERISA), L.P., Galen Partners V, L.P., and
> Galen Partners International V, L.P.) authorized the filing of a Third Amended and
> Restated Certificate of Incorporation to provide for a change in the authorized capital
> stock of the Corporation, including authorization for a new class of shares. The
> authorized capital stock of the Corporation has been increased to 180,000, consisting
> of 92,500 shares of Common Stock, par value of $0.01 per share, and 87,500 shares
> of Preferred Stock, par value $0.01 per share, of which 18,045.532 shares have been
> designated as Series B Convertible Preferred Stock and 58,130 shares have been
> designated as Series C Convertible Preferred Stock.

41.     This action was taken with written consent and without a meeting. As the above-

notice illustrates, the controlling Tailwind Investor caused the issuance to occur at the artificially low

share price of $345 per share. On information and belief, Tailwind Investor substantially increased

its holdings in Nautilus Neurosciences to the detriment of Fares, its minority interest holder. Each

member of the board of directors participated in and acquiesced to this illegal conduct, failing to

consider the rights of Fares as a minority interest holder in the Company.

42.     Based on the foregoing, Fares brings the following claims.

**DEFENDANTS' DUTIES**

43.     By reason of their positions as officers, directors, and fiduciaries with Nautilus

Neurosciences and because of their ability to control the business and corporate affairs of the

Company, Defendants owed Plaintiff, a stockholder of Nautilus Neurosciences, the fiduciary

obligations of good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage Nautilus Neurosciences in a fair, just, honest, and equitable manner. Defendants were and are required to act in furtherance of the best interests of Fares and the other shareholders of Nautilus Neurosciences and not in furtherance of their personal interest or benefit. Each director and officer of Nautilus Neurosciences owes to Fares and the other shareholders of Nautilus Neurosciences the fiduciary duty to exercise good faith and diligence in the administration of the affairs of Nautilus Neurosciences and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

44. Defendants, because of their positions of control and authority as directors and officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

## IV. CLAIMS

**COUNT ONE: BREACH OF FIDUCIARY DUTY THROUGH IMPROPER DILUTION.**

45. Plaintiff hereby incorporates and realleges the matters set forth in the preceding paragraphs as if set forth at length.

46. Defendants, as controlling shareholders, officers and directors of Nautilus Neurosciences, owe to Plaintiff the duties of loyalty, faithfulness, diligence, and prudence.

47. Defendant Tailwind Investor is Nautilus Neurosciences' controlling shareholder because it owns more than 50% of the voting power of the corporation and/or because it exercises control over the business and affairs of the corporation directly and through its members on the board of directors, Raker, the managing director of Tailwind Investor, Karp, the managing partner of Tailwind Investor, and Sica, a managing partner at Tailwind Investor, who are on Nautilus Neurosciences' Board.

48.     Tailwind Investor, as a result of its controlling stockholder status, owes fiduciary duties to the other shareholders, including Plaintiff.

49.     Tailwind Investor and the other Defendants have caused wrongful equity dilution by issuing additional stock for inadequate consideration, which made Plaintiff's investment less valuable.

50.     This claim is appropriately brought directly in this matter because Tailwind Investor, a stockholder having majority or effective control, has caused the corporation to issue excessive shares of its stock in exchange for assets of the controlling stockholder that have lesser value, and the exchange caused an increase in the percentage of the outstanding shares owned by the controlling stockholder and a corresponding decrease in the share percentage owned by the minority shareholders.

51.     Tailwind Investor has control of the day-to-day operations of Nautilus Neurosciences and it controlled the transactions that are the subject of this suit.

52.     Moreover, Defendants, in their roles as executives or directors of Nautilus Neurosciences, and otherwise, participated in the acts of mismanagement and breaches of fiduciary duties alleged herein, acted in gross disregard of the facts, or failed to exercise due care to prevent the unlawful and improper conduct described herein.

53.     Defendants are responsible for their breaches of fiduciary duty, for stripping away value from Nautilus Neurosciences for their own benefit, and for abdicating their responsibilities to Plaintiff as a shareholder in Nautilus Neurosciences, by engaging in the above-referenced acts, by mismanaging Nautilus Neurosciences and by damaging the value of Nautilus Neurosciences, as alleged herein.

54.     As a result of the misconduct described above, and by failing to properly consider the

interests of Plaintiff, Defendants have caused loss and damages to Plaintiff. Therefore, as a result of Defendants' dilution, Defendants are liable to Plaintiff. As a direct result of Defendants' improper conduct as described herein, Plaintiff has sustained substantial injury for which he seeks appropriate judicial relief.

## COUNT TWO: AIDING AND ABETTING BREACH OF FIDUCIARY DUTY (GALEN PARTNERS AND DIRECTOR DEFENDANTS).

55.     Plaintiff incorporates and realleges the matters set forth in the preceding paragraphs as if set forth at length.

56.     Tailwind Investor breached its fiduciary duties to Plaintiff.

57.     By working in concert to commit a breach of fiduciary duty to injure Plaintiff and Nautilus Neurosciences, among other tortious acts as more fully described above, the Director Defendants and Galen Partners became members of a combination that sought to achieve an unlawful purpose and/or to achieve lawful purposes by unlawful means, which has included breach of fiduciary duty, improper dilution, and minority shareholder oppression.

58.     As members of this combination, these Defendants had a meeting of the mind on the object of this combination with Tailwind Investor and one-another and on the course of action that they were undertaking, including the plan to dilute Plaintiff's shares.

59.     The Director Defendants, Galen Partners, and Tailwind Investor colluded in or aided and abetted the breaches of fiduciary duties, and were active and knowing participants in Tailwind Investor's breaches of fiduciary duties owed to Plaintiff.

60.     The Director Defendants and Galen Partners participated in the breach of the fiduciary duties by the Individual Defendants for the purpose of advancing their own interests, and these defendants obtained and will obtain both direct and indirect benefits from colluding in or aiding and

11

abetting the breaches. Among other things, Galen Partners was able to increase its percentage ownership in the Company through the identical dilution tactics utilized by Tailwind Investor.

61.     Defendants committed unlawful acts, as detailed in other counts of this Complaint, to further the object of the combination and to further the course of action undertaken by the combination. The Defendants' unlawful, overt acts included acts constituting breach of fiduciary duty, improper dilution, and minority shareholder oppression.

62.     As a direct and proximate result of the Defendants' wrongful conspiracy and their related, underlying wrongful acts, Plaintiff has sustained substantial injury for which Plaintiff seeks appropriate judicial relief.

## V.  DEMAND FOR JURY TRIAL

63.     Plaintiff demands a trial by jury.

## VI.  PRAYER FOR RELIEF

FOR THESE REASONS, Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

1.     An award of Plaintiff's actual and special damages as pleaded herein, including all contractual, compensatory, consequential, and economic damages, within the jurisdictional limits of the Court;

2.     Plaintiff's reasonable attorneys' fees;

3.     Costs of court;

4.     Pre-judgment and post-judgment interest at the highest rate(s) allowed by law;

5.     Statutory damages allowed by law; and

6.     Such other and further relief, at law or in equity, to which Plaintiff may be entitled and which this Court deems just and fair.

Dated: November 2, 2012

RIGRODSKY & LONG, P.A.

By:  _____
Seth D. Rigrodsky (#3147)
Brian D. Long (#4347)
Gina M. Serra (#5387)
2 Righter Parkway, Suite 120
Wilmington, DE 19803
(302) 295-5310
Email: sdr@rigrodskylong.com
       bdl@rigrodskylong.com
       gms@rigrodskylong.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**POWERS TAYLOR LLP**
Patrick W. Powers
Peyton J. Healey
Campbell Centre II
8150 North Central Expressway, Suite 1575
Dallas, TX 75206
(214) 239-8900
Email: patrick@powerstaylor.com
       peyton@powerstaylor.com