IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JIM FARES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 12-1381-SLR |
| | ) |
| PETER LANKAU, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM**

At Wilmington this 17th day of June, 2014, having reviewed the remaining grounds for dismissal presented in defendants' motion to dismiss for failure to state a claim (D.I. 16; D.I. 28; D.I. 29), the papers filed in connection therewith, as well as the arguments presented by the parties, the court issues its decision based on the reasoning that follows:

1. **Background.** Plaintiff Jim Fares ("Fares"), a shareholder of Nautilus Neurosciences, Inc. ("Nautilus"), filed this action on November 2, 2012 against William Maichle ("Maichle"), Neil Milano ("Milano"), Peter Lankau, Douglas Karp, Eric Liebler, Geoffrey Raker, Frank Sica, Zubeen Shroff, David Azad, John Groom, Galen Partners V, L.P., Galen Partners International V, L..P., Tailwind Capital Partners LP, Tailwind Holdings (Cayman), L.P., Tailwind Management, L.P., Tailwind Capital Partners (AI), L.P., Tailwind Capital Partners (PP), L.P., and Tailwind Capital Partners (ERISA), L.P.

(collectively, "defendants").[1] (D.I. 1) In his amended complaint, filed January 14, 2013, Fares alleges that defendants breached their fiduciary duty and/or aided and abetted a breach of fiduciary duty by wrongfully diluting the value of Nautilus and failing to issue adequate disclosure. (D.I. 12)

2. Defendants contend that the dilution of Fares' equity was due to his refusal to buy his proportionate share of the series C preferred stock rather than defendants' actions. (D.I. 17 at 1) On February 6, 2013, defendants filed a motion to dismiss Fares' amended complaint on various grounds. (D.I. 16) First, defendants contend that Fares' claims should be dismissed because they are derivative, and Fares failed, under Rule 23.1, to make a demand on Nautilus' board of directors or claim demand futility before filing this lawsuit. (D.I. 17 at 9-12) Second, defendants seek dismissal pursuant to Rules 12(b)(3) and 12(b)(6) based on the argument that, pursuant to the 2009 stockholders agreement ("stockholders agreement"), Fares can only bring suit in New York courts and waived the right to a jury trial. (*Id.* at 12-14) Third, defendants allege that Fares released all claims against them in his separation agreement and release, which would allow dismissal pursuant to Rule 12(b)(6). (*Id.* at 14-15) Finally, defendants claim that Fares' breach of fiduciary duty and aiding and abetting claims both fail to state a claim and are pled improperly pursuant to Rule 12(b)(6). (*Id.* at 15-20)

---

[1] The court will refer to Galen Partners V, L.P. and Galen Partners International V, L.P. collectively as "Galen Partners." The court will refer to Tailwind Capital Partners LP, Tailwind Holdings (Cayman), L.P., Tailwind Management, L.P., Tailwind Capital Partners (AI), L.P., Tailwind Capital Partners (PP), L.P., and Tailwind Capital Partners (ERISA), L.P. collectively as "Tailwind Investor." (D.I. 12 at ¶ 21)

2

3. The court granted defendants' motion to dismiss under Rule 23.1 on June 19, 2013. (D.I. 28; D.I. 29) Under the framework established in *Gentile v. Rossette*, 906 A.2d 91, 98 (Del. 2006), the court held that Fares' equity dilution claim was a derivative, not a direct, cause of action (D.I. 28 at 6-7) and found that it did not pass muster under the heightened standard of Federal Rule of Civil Procedure 23.1 for pleading demand futility. (*Id.* at 7-8) At that time, the court did not address defendants' Rule 12(b)(3) or 12(b)(6) grounds for dismissal. (*Id.* at 3)

4. Fares then filed a motion for reconsideration under Federal Rule of Civil Procedure 60(b), as well as a notice of appeal.[2] (D.I. 30; D.I. 31) On August 15, 2013, the court granted Fares' motion for reconsideration on the basis of a change in the controlling law.[3] (D.I. 35 at 2; D.I. 36) On October 21, 2013, the Third Circuit dismissed Fares' appeal. (D.I. 37) Currently before the court is defendants' motion to dismiss based upon the New York forum selection clause included within the parties' stockholders agreement. The court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2).

5. Fares founded Nautilus and was responsible for identifying, negotiating, and acquiring the flagship product of the company, "Cambia," a migraine medication. (D.I.

---

[2]On July 24, 2013, the Third Circuit issued an order staying the appeal pending this court's decision on the motion for reconsideration. (D.I. 34)

[3]*Carsanaro v. Bloodhound Technologies, Inc.*, 65 A.3d 618 (Del. Ch. 2013), was decided by the Delaware Court of Chancery on March 15, 2013, after Fares had filed his answering brief for the motion to dismiss (D.I. 22) but before defendants filed their reply brief (D.I. 25). The court found that *Carsanaro* clarifies the first requirement of *Gentile* such that the court's prior dismissal (D.I. 28; D.I. 29) was arguably inconsistent with Delaware law. (D.I. 35 at 4) Specifically, *Carsanaro* clarifies that a cash exchange for shares at a price that the well-pled facts indicate is too low can satisfy the "exchange of assets" requirement of *Gentile*. (*Id.* at 6) Accordingly, the court held that Fares' complaint satisfies the *Gentile* framework for a direct dilution claim. (*Id.* at 9)

3

12 at ¶ 26) He invested $750,000 in Nautilus and has been a shareholder continuously throughout the relevant time period. (*Id.* at ¶ 27) Cambia was a successful venture, achieving a sales run rate of $12 million between spring 2010 and spring 2011. (*Id.* at ¶ 29) In April 2011, Fares left Nautilus but remained a shareholder. (*Id.* at ¶ 30) In 2010, while still an employee, Fares was issued his shares of stock at $1,000 per share and, upon termination, Tailwind Investor offered Fares a 10% premium over his purchase price, or $1,100 per share. (*Id.* at ¶ 36)

6. Fares alleges that, after his departure, Tailwind Investor and Galen Partners acted in concert to cause Nautilus to issue shares with the goal of increasing their ownership while simultaneously diluting the ownership of minority shareholders. (*Id.* at ¶ 32) To this end, on May 9, 2012, defendants allegedly caused Nautilus to issue a "notice of proposed issuance of notes" (the "May 9 notice"). (*Id.* at ¶ 33) On May 11, 2012, defendants caused Nautilus to issue a "notice of proposed issuance of series C preferred stock" (the "May 11 notice"), which superceded the May 9 notice. (*Id.* at ¶ 34) The series C convertible stock was offered at par value $0.01 per share, at a price of $345 per share. (*Id.*)

7. Fares maintains that the offering price in the May 11 notice was unjustifiably low relative to the value of Nautilus. (*Id.* at ¶ 36) To support his assertion that the company was devalued, Fares cites a valuation of the company made in 2011 based on the sales run rate or yearly sales of Cambia and contends that Nautilus was expected to have a run rate of between $23 and $25 million. (*Id.* at ¶¶ 38-39) In contrast, when

Fares was issued his previous shares, the run rate was $12 million, yet Fares paid a higher purchase price of $1,000 than the $345 purchase price offered in the May 11 notice. (*Id.* at ¶ 38)

8. After Fares received the notices, he sent a letter through counsel on June 4, 2012 to Maichle, CEO of Nautilus, objecting to the proposed issuance because it would dilute the interests of minority shareholders. (*Id.* at ¶ 41) On June 13, 2012, Fares sent another letter requesting access to Nautilus' books and records. (*Id.*) His requests were denied. (*Id.* at ¶ 42) Nautilus, by way of Milano, Chief Financial Officer, Secretary and Treasurer, sent out a July 20 "Notice to Minority Stockholders of Nautilus Neurosciences, Inc.," which explained the amendment of the certificate of incorporation to reflect the addition of the new class of shares. (*Id.* at ¶ 43)

9. **Standard of Review.** Section 1404(a) of Title 28 of the United States Code grants district courts the authority to transfer venue "[f]or the convenience of parties and witnesses, in the interests of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A forum selection clause is deemed valid if there has "been no 'fraud, influence, or overweening bargaining power.'" *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995) (quoting *Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 12 (1972)). If valid, "a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum" and "the plaintiffs bear the burden of demonstrating why they should not be bound by their contractual choice of forum." *Id.* at 880.

10. The court has discretion in deciding whether to transfer or dismiss a case on the basis of a valid forum selection clause. *See Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 297-300 (3d Cir. 2001); *Darlington v. High Country Archery*, Civ. No. 10-7451, 2011 WL 3514794 at *2 (E.D. Pa. Aug. 10, 2011). On the one hand, "a 12(b)(6) dismissal is a permissible means of enforcing a forum selection clause that allows suit to be filed in another federal forum." *Salovaara*, 246 F.3d at 298; *see also Crescent Int'l Inc. v. Avatar Cmtys, Inc.*, 857 F.2d 943 (3d Cir. 1988). On the other, the Third Circuit acknowledges that "as a general matter, it makes better sense, when venue is proper but the parties have agreed upon a not-unreasonable forum selection clause that points to another federal venue, to transfer rather than dismiss." *Id.* at 299.

11. **Discussion**. The forum selection clause at the center of this dispute arises out of the stockholders agreement, which governs Fares' rights, duties and obligations as a Nautilus stockholder. (D.I. 18, ex. B) Fares entered into a joinder agreement on January 1, 2010 wherein Fares acquired Nautilus stock subject to the terms and conditions of the stockholders agreement and agreed to be bound by it. (D.I. 18, ex. C) Section 14.12 of the stockholders agreement provides:

> EACH PARTY HEREBY IRREVOCABLY AND UNCONDITIONALLY CONSENTS AND AGREES TO SUBMIT TO THE EXCLUSIVE JURISDICTION OF THE STATE OR FEDERAL COURTS IN THE STATE OF NEW YORK . . . FOR ANY LITIGATION AMONG THEM ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY TRANSACTIONS CONTEMPLATED HEREBY, ANY RELATIONSHIPS BETWEEN THE PARTIES HEREUNDER AND ANY DISPUTES BETWEEN THE PARTIES WITH RESPECT TO ANY OF THE FOREGOING (AND AGREES NOT TO COMMENCE ANY LITIGATION RELATING THERETO

> EXCEPT IN THE NEW YORK COURTS), WAIVES ANY OBJECTION TO THE LAYING OF VENUE OF ANY SUCH LITIGATION IN THE NEW YORK COURTS AND AGREES NOT TO PLEAD OR CLAIM IN ANY COURT THAT SUCH LITIGATION BROUGHT IN THE NEW YORK COURTS HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.

(D.I. 18, ex. B) Neither party disputes that section 14.12 of the stockholders agreement is a valid forum selection clause. (D.I. 17 at 12-13; D.I. 22 at 5-7) Rather, the controversy is over whether the forum selection clause covers the subject matter of Fares' claims. Defendants contend that the issuance of series C convertible stock relates to the stockholders agreement and, thus, the forum selection clause applies. (D.I. 17 at 12) Specifically, section 8 of the stockholders agreement regulates the issuance of new shares in Nautilus. (D.I. 18, ex. B)

12. Contrary to Fares' argument that the forum selection clause is merely permissive, section 14.12 of the stockholders agreement explicitly limits venue to the state or federal courts in New York "for any litigation . . . arising out of or relating to . . ." the stockholders agreement. (D.I. 18, ex. B) Moreover, Fares' argument that his claims exist at common law misses the mark, as Fares' claims nevertheless relate to section 8 of the stockholders agreement and fall within the scope of the forum selection clause.

13. As noted above, upon finding a valid forum selection clause, the court "may transfer the case to the stipulated venue rather than dismiss the case." *Darlington*, 2011 WL 3514794 at *3; *see also Hall v. Ski Shawnee, Inc.*, Civ. No. 06-CV-275, 2006 WL 2869528 at *4 (E.D. Pa. Oct. 4, 2006) ("Generally, transfer to the proper forum is preferable to outright dismissal because it avoids repetitive motion practice and

unnecessary costs.") "A motion to transfer is not a prerequisite to transfer under § 1404(a)." *Id.* Consequently, the court concludes that the parties' choice of venue as stipulated in the shareholders agreement should govern, and the case should be transferred to the United States District Court for the Southern District of New York.

14. **Conclusion.** For the foregoing reasons, defendants' motion to dismiss is denied;[4] however, the case is transferred to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a). An appropriate order shall issue.

                                                /s/ Sue L. Robinson
                                              United States District Judge

---

[4] Given the decision to transfer, the court does not address defendants' remaining grounds for dismissal.